UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TONY PAUL WILKEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES,<br><br>　　　　　Defendants. | Civil Action No. 1:22-cv-0455 (ABJ) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the United States Citizenship and Immigration Services ("Defendant"), by and through the undersigned counsel, respectfully moves for summary judgment because there are no genuine issues of material fact. Defendant has satisfied all of its obligations under the Freedom of Information Act, 5 U.S.C. § 552, et al. ("FOIA"), regarding the instant action arising from a FOIA request filed by Tony Wilkey ("Plaintiff"). Therefore, Defendant is entitled to judgment as a matter of law.

As demonstrated by the attached Memorandum of Points and Authorities, Defendant is entitled to judgment as a matter of law as Defendant conducted a reasonable search, produced all documents responsive to Plaintiff's request and properly withheld information pursuant to FOIA's statutory exemptions.

Dated: July 8, 2022　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　MATTHEW GRAVES, D.C. Bar No. 481052
　　　　　　　　　　　　　　　　　United States Attorney
　　　　　　　　　　　　　　　　　for the District of Columbia

　　　　　　　　　　　　　　　　　BRIAN HUDAK
　　　　　　　　　　　　　　　　　Civil Chief

By _____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C. 20530
Telephone: (202) 252-2562

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TONY PAUL WILKEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES CITIZENSHIP AND )<br>IMMIGRATION SERVICES, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:22-cv-0455 (ABJ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, the United States Citizenship and Immigration Services ("Defendant" or "USCIS"), by and through undersigned counsel, submits this Memorandum of Points and Authorities in support of its Motion for Summary Judgment in this action arising from a Freedom of Information Act request, 5 U.S.C. § 552, *et seq.* ("FOIA"), for records related to the Alien file ("A-file") of Tony Wilkey ("Plaintiff").

Defendant is entitled to judgment as a matter of law as it (1) conducted a reasonable search; (2) produced all documents responsive to Plaintiff's request and subject to FOIA; and (3) properly withheld information pursuant to valid invocation of FOIA statutory exemptions.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................4
TABLE OF AUTHORITIES ............................................................................................................4
INTRODUCTION AND SUMMARY .............................................................................................6
RELEVANT BACKGROUD ...........................................................................................................6
STANDARD OF REVIEW ..............................................................................................................9
   1.   **General Summary Judgment Standard** ................................................................................9
ARGUMENT ..................................................................................................................................11
   1.   **USCIS Conducted an Adequate Search for Plaintiff's Records** ......................................11
   2.   **Specific FOIA Exemptions Prohibited the Disclosure of the Withheld Portions of the State Declaration** ...................................................................................................................13
      A.   Per FOIA Exemption 6, USCIS Properly Withheld the Consular Officer's Name From the Header and Paragraphs 3, 4, and 6 .................................................................................13
      B.   Per FOIA Exemption 5, USCIS Properly Withheld Portions of Paragraph 3 That Contained the Consular Officer's Observations and Analysis of Plaintiff and His Renunciation Request ...................15
      3.   Per FOIA Exemption 7(E), USCIS Properly Withheld Portions of Paragraph 3 That Detail Law Enforcement Techniques For Assessing Citizenship Renunciation Requests ........................18
CONCLUSION ...............................................................................................................................19
CERTIFICATE OF SERVICE ........................................................................................................20

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................................9
*Bowen v. FDA*, 925 F.2d 1225, 1228 (9th Cir. 1991) .....................................................................19
*Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011) ....................................10
*Campbell v. United States DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998). ...............................................11
*Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C.Cir.1987) .........................................14
*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ..........................................................................9
*Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ...16
*Defs. of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 91 (D. D.C. 2009) ..............................12
*Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) ..................................................14
*Evans v. Federal Bureau of Prisons,* 951 F.3d 578, 584 (D.C. Cir. 2020) .....................................10
*Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied,* 446 U.S. 937 (1980) .........................................................................................................10
*Hussain v. United States Dep't of Homeland Sec.*, 674 F. Supp. 2d 260. 267 (D. D.C. 2009) .......13
*Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006) .............................14
*Jud. Watch, Inc. v. United States Dep't of Just.*, 20 F.4th 49, 54–55 (D.C. Cir. 2021) ...................16

*Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) .................................................................. 10
*Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) ........................................................................ 14
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ..................................... 9
*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) ............. 16
*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) ............................................ 11, 12
*Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1243 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1123 (1997) ............................................................................................................................. 19
*Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1121 (D.C. Cir. 2007) ....................................... 12
*National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) ................. 15
*Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 849 F. Supp. 2d 6, 11 (D. D.C. 2012) ................. 12
*nited States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785–86 (2021) ...................... 16
*Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). ............................................................... 12
*SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ............................................... 12
*Shapiro v. United States Dep't of Just.*, 893 F.3d 796, 800 (D.C. Cir. 2018) ...................................... 19
*Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ............................. 11
*Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) .................. 9
*Trans Union LLC v. FTC*, 141 F.Supp.2d 62, 67 (D. D.C. 2001) ......................................................... 11
*Truitt v. Department of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) .................................................... 11
*United States Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994)) .................................................. 14
*United States Dept. of Defense v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992) ........................................ 14
*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) ....................................... 11
*Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) ....................................................... 12
*Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) ............................................... 11
*Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505-7 (D.C. Cir. 2016) ........................................ 10

**Statutes**

5 U.S.C. § 552 ............................................................................................................................. 1, 3, 7, 16

**Other Authorities**

Declaration of Cynthia Munita ........................................................................................................... 6, 13
Declaration of Susan C. Weetman ............................................................................................................ 7
ECF No. 1: Complaint of Plaintiff Tony Paul ............................................................................... 8, 13, 15

**Rules**

Fed. R. Civ. P. 56 .................................................................................................................................. 1, 3

## INTRODUCTION AND SUMMARY

This motion addresses the adequacy of Defendant's search for Plaintiff's Alien file records, as well as the nondisclosure of portions of a U.S. Department of State ("State") memorandum within that file. After USCIS disclosed hundreds of pages of this Alien file, Plaintiff filed an administrative appeal for further releases. USCIS then proactively released additional pages from this file containing the State Department's memorandum prepared by a consular officer who interviewed Plaintiff pursuant to his request to renounce his United States Citizenship. Small portions of that memorandum were withheld because they contained the name of the consular officer who interviewed Plaintiff, observations and analysis that informed the officer's recommendation to superiors, and techniques related to assessing the veracity of renunciation requests. These portions were withheld pursuant to FOIA Exemptions 6, 5, and 7(E), respectively.

## RELEVANT BACKGROUD

**1.    USCIS Processes Plaintiff's FOIA Request for His Alien File and Releases Over 370 Pages**

On November 5, 2021, Plaintiff, a citizen of the United Kingdom who renounced his United States citizenship in 2012, filed a FOIA request seeking a copy of his entire Alien file ("A-file"). Munita Declaration ("Munita") at 2-3, ¶ 6. Alien files are a physical and/or digital compilation of an individual's immigration records that are created when an individual seeks a long term or permanent benefit, or when enforcement action is initiated. *Id.* Within twelve days, USCIS confirmed receipt of this FOIA request (control number: NRC2021215458). *Id.* The next month, on December 16, 2021, USCIS notified Plaintiff that it completed processing and "was releasing 377 pages in full, 79 pages in part, and withholding 11 pages in full." *Id.* at 3, ¶ 6.

2.      **USCIS Twice Releases Additional Pages of Alien File**

Around December 20, 2021, Plaintiff submitted an administrative appeal to USCIS challenging the withholdings. *Id.* USCIS granted in part and denied in part the appeal. It, however, granted the additional release of 63 full pages and 3 partial pages. *Id.* After this decision, USCIS continued consultations with the United States Department of State ("State") FOIA Office concerning additional releases. *Id.* at 3, ¶ 7. State has equities in the withholding in the sole remaining document that is relevant to this action.

In January 2022, Plaintiff filed this action. In particular Plaintiff seeks records related to his renunciation of United States citizenship, including his 2012 renunciation interview with a consular official in Hong Kong. Plaintiff alleges that the consular officer recorded two pages of notes pertaining to Plaintiff's renunciation interview.  ECF No. 1 at 5, ¶ 19. Plaintiff has—repeatedly—reiterated during this litigation that the renunciation interview memorandum is his primary interest.

On April 27, 2022, USCIS provided Plaintiff with a second, separate supplemental release of two pages from his Alien file. *Id.* These two pages contained a State memorandum prepared by the consular official who conducted Plaintiff's renunciation interview in Hong Kong in July 2012. Weetman Declaration ("Weetman") at 3, ¶ 5. Generally, the memorandum provides information and the counselor officer's notes regarding Plaintiff's request to renounce his citizenship, which was awaiting "final determination" by State. *Id.* at 3, ¶ 7.

Defendant released the majority of the sole relevant memorandum's content. But some portions of the document were withheld pursuant to FOIA Exemptions 5, 6, and 7(E). *Id.* at 3-5, ¶ 6-11; *see* 5 U.S.C. § 552(b)(5), (6), and (7)(E). Although portions of paragraph three of the memorandum were withheld, every other paragraph was fully released except where the name of

the consular officer appeared. *Id.* The header was released in full, except that the name of the consular officer was withheld under Exemption 6. *Id.* at 3, ¶ 6. The first and second paragraphs were released in full. *Id.* at 3-4, ¶ 7-8. These paragraphs explain that a Certificate of Loss of U.S. Nationality was attached for "final determination" by State, identify the Plaintiff, and note that the Plaintiff "formally and voluntarily renounced" his United States citizenship at the United States Consulate in Hong Kong. *Id.*

The third paragraph was partially withheld. *Id.* at 4, ¶ 9-10. This paragraph "largely reflect[s] the State consular officer's summary and analysis of his interviews with the Plaintiff on March 12, 2012, and July 13, 2012, including evaluations of Plaintiff and his renunciation request." *Id.* Specifically, paragraph three contains the name of the consular officer, which was withheld pursuant to FOIA Exemption 6. Under FOIA Exemption 5, parts of paragraph three were withheld where they detailed the consular officer's "observation and analysis" of the Plaintiff and his renunciation application. *Id.* The consular officer made these notes to inform his recommendation to the Bureau of Consular Affairs' Office of American Citizens Services ("the Bureau") to accept Plaintiff's renunciation request, and the Bureau's subsequent decision to accept this recommendation. *Id.* The portion of paragraph three that discusses non-public law enforcement procedures for evaluating citizenship renunciation requests was withheld pursuant to FOIA Exemption 7(E). *Id.*

The remaining paragraphs were fully released, except where the name of the consular officer appeared. *Id.* at 5, ¶ 11. The fourth paragraph was released in full, except that the name of the consular officer was withheld under FOIA Exemption 6. *Id.* Paragraph five was released in full. *Id.* The sixth paragraph—which contains the officer's recommendation that the renunciation request be approved—was released in full, except that the name of the consular officer was withheld under FOIA Exemption 6. *Id.*

## STANDARD OF REVIEW

**1.      General Summary Judgment Standard**

Summary judgement is an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is required where no genuine dispute exists as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *Id.* at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party meets this modest obligation, the non-movant bears the burden of producing specific facts—not mere allegations—that indicate a genuine issue exists for trial and that a reasonable jury could find for the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" for a reasonable jury to find for the non-movant. *Anderson*, 477 U.S. at 252. In responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Summary judgement is required where the non-moving party fails to produce sufficient objective evidence that would permit "a jury to reasonable find" in its favor. *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987). Although "a motion for summary judgment cannot be 'conceded' for want of opposition" and

the "District Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment," the court may treat any unaddressed factual statement in defendant's motion as undisputed. *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505-7 (D.C. Cir. 2016) (internal quotations omitted); LCvR 7(h)(1) ("[T]he Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). Thus, to avoid summary judgment here, the Plaintiff (as the non-moving party) must present some objective evidence that would enable the Court to find he is entitled to relief.

### 2. Summary Judgment Standard as Applied to FOIA Cases

"The vast majority of FOIA cases" are resolvable via summary judgment. *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the Courts. *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980).

In a FOIA suit, no material facts are in dispute, and summary judgement for an agency is required, where the agency demonstrates that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *See Evans v. Federal Bureau of Prisons,* 951 F.3d 578, 584 (D.C. Cir. 2020); *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). An agency affidavit alone is sufficient to demonstrate that a document is unidentifiable or exempt, if the affidavit is "'relatively detailed[,] non-conclusory, and … submitted in good faith.'" *Evans vs. Federal Bureau of Prisons*, 951 F.3d at 584 (quoting *SafeCard Servs., Inc. v. S.E.C.,* 926 F.2d 1197, 1200 (D.C. Cir. 1991); *see Trans Union LLC v. FTC*, 141 F.Supp.2d 62, 67 (D. D.C. 2001) (summary judgment in FOIA cases may be awarded

solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non- disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

## ARGUMENT

**1.     USCIS Conducted an Adequate Search for Plaintiff's Records**

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citing *Campbell v. United States DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998)). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id*. (quoting *Truitt v. Department of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). Although there "is no requirement that an agency search every record system," it "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

To demonstrate that it has performed an adequate search for responsive documents, an agency must submit a reasonably detailed affidavit describing the search. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 91 (D. D.C. 2009). An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68. However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific

enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment. *Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980). Moreover, conclusory assertions about the agency's thoroughness are insufficient. *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1121 (D.C. Cir. 2007); *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 849 F. Supp. 2d 6, 11 (D. D.C. 2012) ("The affidavit must explain the scope and method of the agency's search in a non-conclusory fashion.").

"Agency affidavits are accorded a presumption of good faith," *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), which can be rebutted with "evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests. *Valencia-Lucena*, 180 F.3d at 326.

Here, USCIS performed an adequate search, and Plaintiff does not appear to challenge the adequacy of that search. Plaintiff requested a copy of his Alien file, and USCIS's search located and released all non-exempt, responsive pages within that Alien file. As the Munita declaration makes clear, USCIS's search of records located an Alien file corresponding to Plaintiff and USCIS released several hundred pages from this file over the course of two releases. Weetman at 3, ¶ 6-7. As Plaintiff concedes, records related to Plaintiff's renunciation interview would be contained in this Alien file that USCIS located and released portions of following its search. ECF No. 1 at 2, ¶ 4. Thus, the Munita declaration makes clear that an adequate and good faith search was conducted because the requested records were located, and Plaintiff has not challenged the adequacy of the search in his complaint. *Hussain v. United States Dep't of Homeland Sec.*, 674 F. Supp. 2d 260. 267 (D. D.C. 2009) ("There can be no question that the search terms used to locate plaintiff's A- File were adequate, because USCIS succeeded in locating the A-File; no other responsive documents are in the possession of USCIS."

**2.      Specific FOIA Exemptions Prohibited the Disclosure of the Withheld Portions of the State Declaration**

USCIS lawfully withheld portions of the State Memorandum. First, USCIS withheld the name of the consular officer wherever it appeared pursuant to FOIA Exemption 6 because the officer's privacy interest outweighed any public interest in disclosure. Second, USCIS withheld the portion of paragraph three that contained the consular officer's observations and analysis of Plaintiff that formed the basis of his recommendation to accept the renunciation of citizenship request. This withholding was lawfully done pursuant to the deliberative process privilege incorporated by FOIA Exemption 5. Third, per Exemption 7(E), USCIS properly withheld portions of paragraph three that discussed law enforcement techniques for determining whether someone is validly requesting to renounce their citizenship, because USCIS and State logically demonstrated that, if bad actors knew these techniques, they would be more likely to be able to evade them and present false information.

**A.      Per FOIA Exemption 6, USCIS Properly Withheld the Consular Officer's Name From the Header and Paragraphs 3, 4, and 6**

USCIS cannot release the name of the consular officer because doing so "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §522(b)(6) ("Exemption 6"). If information (1) derives from "personnel and medical files and similar files" and (2) the disclosure of that information "would constitute a clearly unwarranted invasion of personal privacy, Exemption 6 prevents disclosure. *Id.*

First, this provision covers a broad array of personal details. The term similar files encompasses "all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)). This information includes "bits of personal information, such as names and addresses, the release

of which would 'create[ ] a palpable threat to privacy.'" *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C.Cir.1987)).

Second, a disclosure is a "clearly unwarranted invasion of personal privacy" if the interests of protecting "an individual's private affairs from unnecessary public scrutiny" outweigh "the public's [interest] to governmental information." *Lepelletier*, 164 F.3d at 46 (citing *United States Dept. of Defense v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992)). The only public interest considered in this balancing test is "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Id.*, 164 F.3d at 46 (quoting *United States Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994); s*ee also Reporters Committee*, 489 U.S. at 773. If information does not directly reveal the operation or activities of the federal government and the person to whom the information belongs does not request its disclosure, it "falls outside the ambit of [this] public interest." *Id.* at 775; *Lepelletier*, 164 F.3d at 48.  "[E]ven a modest privacy interest, outweighs nothing every time." *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

Here, Exemption 6 protects the name of the consular officer from disclosure. First, the name of the consular officer is protected from disclosure under Exemption 6 unless a public interest outweighs the privacy interest. *See Judicial Watch,* 449 F.3d at 152 (holding that the names of FDA officials who worked on approval of an abortion drug constituted "personnel and medical files or similar files" under Exemption 6).

Second, the Consular Officer's privacy interest outweighs the non-existent public interest in disclosing his identity. In *Judicial Watch*, Plaintiff asserted that the public needed to know the names of FDA officials who approved an abortion medication because the medicine posed health

risks to users. *Id*. The DC Circuit held that privacy interest in protecting the names of FDA officials to avoid harassment—without having to prove a particular threat of harassment to any individual official--outweighed the public interest because there was no "legitimate public interest" in knowing the names of these officials. *Id*. Here, the case against disclosure is just as strong and perhaps even stronger. Defendant asserts an identical privacy interest in avoiding harassment. Weetman at 3, ¶ 6. But Plaintiff has not even asserted a public interest in disclosure. And with good reason: none exists. The name of the consular officer would "shed no light on the operations and activities of the U.S. Government." *Id.* Instead, Plaintiff merely asserts that he wants the requested pages released in full for his own personal ends related to obtaining an immigration benefit. *See* ECF No. 1 at 2, ¶ 3.[1]

**B.    Per FOIA Exemption 5, USCIS Properly Withheld Portions of Paragraph 3 That Contained the Consular Officer's Observations and Analysis of Plaintiff and His Renunciation Request**

Defendant properly withheld portions of paragraph three of the State Memorandum under Exemption 5 of FOIA because it contained deliberative, pre-decisional notes and observations that the consular officer prepared before making a recommendation to the Bureau, which, in turn, rendered a final decision on Plaintiff's renunciation request. Exemption 5 shields a record if it: (1) is an "inter-agency or intra-agency memorandum[] or letter[]" that (2) "would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see also McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011).

The deliberative process privilege shields government materials under Exemption 5

---

[1] Plaintiff attempts to unilaterally disclose the name of the consular officer by identifying him/her in the complaint as "Officer Jones." ECF 1 at 5, ¶ 19. However, without confirming or denying that this is the officer's name, the United States notes that Plaintiff cannot abolish Exemption 6 by attempting to guess and disclose the name of a government employee.

because any privilege "available to Government agencies in civil litigation" applies to Exemption 5. *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785–86 (2021). The deliberative process privilege shields agency documents that are: (1) pre-decisional and (2) deliberative. *Jud. Watch, Inc. v. United States Dep't of Just.*, 20 F.4th 49, 54–55 (D.C. Cir. 2021). The purpose of the privilege is to promote candid agency deliberation by blunting the "chilling effect that companies the prospect of disclosure." 141 S. Ct. at 186. Materials are pre-decisional if they are "'generate[d] before the adoption of an agency policy,'" and the agency does not create them as "its final view on the matter." 20 F.4th at 54 (quoting *Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Courts will deem a document deliberative if the agency can: (a) explain the deliberative process involved and the role the documents played in that process, (b) explain the nature of the decision making authority vested in the person who issued the document, and (c) explain the "relative positions in the agency's chain of command occupied by the document's author and recipient." *Id*. at 55 (quoting 617 F.2d at 866).

i. **The Consular Officer's Observations and Analysis Were Pre-decisional**

The consular officer's observations and analysis ("notes") of Plaintiff and his citizenship renunciation request were pre-decisional because they temporally preceded State's decision to accept this request and because the State Department did not treat them as "its final view on the matter." First, these notes were produced before the State Department decided whether to accept Plaintiff's request. Weetman at 4, ¶ 10.

Second, the mere fact that the State Department accepted the consular officer's recommendation to accept Plaintiff's request does not make these notes the agency's final view on the matter. In *Judicial Watch*, the D.C. Circuit held that attachments to four emails prepared by Acting Attorney General Sally Yates on the day she issued a statement declining to defend a

presidential executive order pre-decisional because they preceded the "'finalization and transmission'" of the "'final decision'"—a separate letter transmitted by her later that same day. *See Jud. Watch*, 20 F.4th at 55. Here, as in *Judicial Watch*, the consular officer's notes preceded the finalization and transmission of the final decision—the letter issued by the Department of State to Plaintiff accepting his request to renounce his citizenship.

  The pre-decisional nature of these notes is even clearer than in *Judicial Watch*. Here, the final decision was issued by a separate entity (the Bureau rather than the consular officer) and the final decision was made at a later period (not on the same day as the notes). The Supreme Court has noted the functional importance of the chilling effect rationale in determining whether a document is pre-decisional. *See Sierra Club,* 141 S. Ct. 777, 785–86. And, here, the Weetman declaration explains that consular officers might be less likely to offer candid advice and evaluations of those they interview if they knew their notes were subject to disclosure. Weetman at 4, ¶ 10

**ii.**  **The Consular Officer's Observations and Analysis Were Deliberative**

  The consular officer's notes were also deliberative because the agency has thoroughly explained the deliberative nature of the "'individual document and the role it plays in the administrative process.'" *Jud. Watch*, 20 F.4th at 55 (quoting 617 F.3 at 867). First, the agency, in the Weetman declaration, has explained that the deliberative process involved is that the consular officer must consider whether to recommend that the Bureau accept Plaintiff's request to renounce his United States citizenship. Weetman at 4, ¶ 10. And the agency, in the Weetman declaration, has explained that these notes were crucial for the officer to make that recommendation because they contained his observations and analysis of his interview of Plaintiff and his request. Id. Second, the agency, in the Weetman declaration, has explained the nature of the decision making authority vested in the officer or person issuing the disputed

document, and that the consular officer had no authority to decide the issue. *Jud. Watch*, 20 F.4th at 55. He/she solely made a recommendation that the Bureau could accept or reject. Weetman at 4, ¶ 10. Third, the documents author —a consular office —occupies a relatively lower position in the "'chain of command'" compared to the Bureau because the Bureau has the power to accept or reject his recommendations. *See Jud. Watch* 20 F.4th at 55; Weetman at 4, ¶ 10.

3.  **Per FOIA Exemption 7(E), USCIS Properly Withheld Portions of Paragraph 3 That Detail Law Enforcement Techniques For Assessing Citizenship Renunciation Requests**

Under Exemption 7(E), USCIS properly withheld portions of paragraph three of the State Memorandum. Under Exemption 7(E), government agencies need not disclose documents that: (1) "are part of 'investigatory records compiled for law enforcement purposes'"—including civil investigations--and that (2) "would disclose techniques and procedures [or] guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." U.S.C. § 552(b)(7)(E); *Mittleman v. OPM,* 76 F.3d 1240, 1243 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1123 (1997) (citing *Pratt v. Webster*, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)). The government agency need only show "'logically how the release of [the requested information] might create a risk of circumvention of the law. *Shapiro v. United States Dep't of Just.*, 893 F.3d 796, 800 (D.C. Cir. 2018) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (alterations in original))). The agency does not need to describe the law enforcement techniques in detail—or even generally if this would inadvertently disclose the techniques—to utilize this exemption. *See e.g., Bowen v. FDA*, 925 F.2d 1225, 1228 (9th Cir. 1991); *Coleman v. FBI*, 13 F.Supp.2d 75, 83 (D.D.C. 1998); *Smith v. BATF*, 977 F.Supp. 496, 501 (D.D.C. 1997).

The withheld sentences of paragraph three meet both these criteria. First, the State

Memorandum is an investigatory record compiled for law enforcement purposes because the consular officer was recording notes of an interview conducted for the purposes of assessing whether Plaintiff conformed with the legal criteria for renouncing citizenship. *See* Weetman at 4, ¶9. Second, the agency has logically shown in the Weetman declaration that the disclosure of law enforcement techniques embedded in these withheld sentences would reasonably increase the risk of circumventing the law by allowing bad actors to adapt their behavior to evade these techniques and conceal false information. Weetman at 5, ¶ 10.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court enter judgment in its favor. A proposed order is attached.

Dated: July 8, 2022                                     Respectfully submitted,

MATTHEW GRAVES, D.C. Bar No. 481052
United States Attorney
for the District of Columbia

BRIAN HUDAK, D.C.
Civil Chief

By:_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. B Civil Division
Washington, D.C. 20530
Telephone: (202) 252-2562

## **CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing Defendant's Motion for Summary Judgment to be served upon Plaintiff's Counsel via ECF on this 8th day of July, 2022.

/s/
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-2562